UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| **COMMODITY FUTURES TRADING COMMISSION,**<br><br>Plaintiff,<br><br>v.<br><br>**RICO OMAR COX,**<br><br>Defendant. | Case No:  0:22-cv-61024<br><br><br>Judge: |

**COMPLAINT AGAINST RICO OMAR COX FOR INJUNCTIVE AND OTHER EQUITABLE RELIEF AND CIVIL MONETARY PENALTIES**

Plaintiff Commodity Futures Trading Commission ("CFTC" or "Commission"), an independent federal agency, by and through its attorneys, for its Complaint against Defendant Rico Omar Cox alleges as follows:

### I.   INTRODUCTION

1. Beginning in at least December 2019 and continuing through the present (the "Relevant Period"), Rico Omar Cox ("Cox"), has operated a fraudulent scheme in which he has solicited and accepted funds for participation in a commodity pool ("Pool") that he proceeded to lose trading or misappropriated for personal use.  Cox has persuaded at least fourteen individuals ("Pool Participants") to transfer at least $842,900 to him or others for the purpose of trading commodity futures.

2. In the course of soliciting funds as well as after receiving Pool Participant funds, Cox knowingly has made fraudulent and material misrepresentations and/or omitted material facts about the use of Pool Participants' funds and the profits and balances of the Pool.

3.  Rather than use all of the Pool Participants' funds to trade commodity futures, Cox has traded only a portion and instead misappropriated another portion of Pool Participants' funds. What trading Cox did was unsuccessful, and resulted in trading losses of at least $312,906.

4.  Cox is no stranger to the U.S. District Court for the Southern District of Florida. On June 1, 2016, the U.S. District Court for the Southern District of Florida entered a final judgment by default against Cox. *See CFTC v. Cox*, No. 16-60226-civ-WJZ (S.D. Fla. June 1, 2016), ECF 13 ("2016 Order"), requiring restitution of $381,000 and imposing a $560,000 civil monetary penalty against Cox for defrauding his customers in connection with a scheme almost identical to the one alleged here (the primary difference being that the first time around Cox lost the bulk of participant funds trading, whereas in the instant case Cox misappropriated a significant amount of the Pool Participants' funds for direct personal benefit). The 2016 Order permanently enjoined Cox from further violations of the Commodity Exchange Act ("CEA" or "Act"), 7 U.S.C. §§ 1-26, as charged, and imposed permanent trading and registration bans on him.

5.  Because Cox has solicited funds for the purpose of trading futures in a pooled account and otherwise operated a commodity pool, he acted as a commodity pool operator ("CPO") without being registered or exempt from registration with the Commission as a CPO, as required by the Act and CFTC Regulations ("Regulations"), 17 C.F.R. pts. 1-190 (2021). When soliciting Pool Participants, Cox used or is using the mails, telephone services, or other instrumentalities of interstate commerce to engage in business of commodity futures trading and operating a commodity pool.

6. Through the acts and practices described herein, Cox has engaged, is engaging, or is about to engage in fraudulent acts and practices in violation of Sections 4b(a)(1)(A)-(C) and 4*o*(1)(A)-(B) of the Act, 7 U.S.C. §§ 6b(a)(1)(A)-(C), 6*o*(1)(A)-(B), and failed to register as a CPO in violation of Section 4m(1), 7 U.S.C. § 6m(1).

7. Unless restrained and enjoined by this Court, Cox is likely to continue to engage in the acts and practices alleged in this Complaint, or in similar acts and practices.

8. Accordingly, the CFTC brings this action pursuant to 7 U.S.C. § 13a-1, to enjoin Cox's unlawful acts and practices and to compel his compliance with the Act and Regulations. In addition, the CFTC seeks disgorgement, civil monetary penalties, restitution, and such equitable relief as this Court may deem necessary and appropriate.

## II.  JURISDICTION AND VENUE

9. This Court has jurisdiction over this action under 28 U.S.C. § 1331 (federal question jurisdiction) and 28 U.S.C. § 1345 (district courts have original jurisdiction over civil actions commenced by the United States or by any agency expressly authorized to sue by Act of Congress). This Court also has jurisdiction over the subject matter of this action and Cox pursuant to Section 6c(a) of the Act, 7 U.S.C. § 13a-1(a), which authorizes the Commission to seek injunctive relief against any person whenever it shall appear that such person has engaged, is engaging, or is about to engage in any act or practice constituting a violation of any provision of the Act or any rule, regulation, or order thereunder.

10. Venue properly lies with this Court pursuant to Section 6c(e) of the Act, 7 U.S.C. § 13a-1(e), in that Cox is found in, inhabits, and transacted business in this District, and Cox's acts and practices in violation of this Act have occurred, are occurring, and/or are about to occur within this District, among other places.

### III. PARTIES

11. Plaintiff **Commodity Futures Trading Commission** is the independent federal regulatory agency charged by Congress with the administration and enforcement of the Act and the Regulations promulgated thereunder.

12. Defendant **Rico Cox** resides in Fort Lauderdale, Florida. In addition to being subject to the previously described 2016 Order, in April 2013, Cox was convicted of third-degree felony fraud and acting as an unlicensed mortgage broker in Broward County, Florida and was sentenced to five years' probation. *See Florida v. Cox*, Case No. 12016762CF10A (Fla. Broward County Ct., Apr. 18, 2013). Later the same month, Cox was separately convicted of: (a) a felony scheme to defraud and operating as a broker/sales associate without a license; and (b) felony grand theft and operating as a broker/sales associate without a license, in Palm Beach County, Florida, and was sentenced to thirty days' imprisonment and five years' probation. *See Florida v. Cox*, Case Nos. 2012CF005665AXXX, and 2013CF001453AXXX (Fla. Palm Beach County Ct., Apr. 30, 2013). Cox has never been registered with the Commission in any capacity.

### IV. OTHER RELEVANT ENTITY

13. Smart Edge Investments LLC ("Smart Edge") was a Florida limited liability company with its business address in Ft. Lauderdale, Florida. Smart Edge's articles of organization were filed with the State of Florida on March 7, 2016. According to documents on file with the State of Florida, Division of Corporations, Smart Edge's registered agent and manager is Cox's wife, Jennifer Cox. According to records of the State of Florida, the last annual report filed for Smart Edge was on March 12, 2020. Smart Edge is currently an inactive company, and administratively dissolved. At least $262,000 of Pool Participant funds were

deposited into bank accounts in the name of Smart Edge. Smart Edge has never been registered with the Commission in any capacity.

## V.   STATUTORY BACKGROUND

14. A commodity pool is defined in Section 1(a)(10) of the Act, 7 U.S.C. § 1(a)(10), in relevant part, as any investment trust, syndicate, or similar form of enterprise operated for the purpose of trading in commodity interests.

15. A CPO is defined in relevant parts of Section 1a(11) of the Act, 7 U.S.C. § 1a(11)(A)(i), and Regulation 1.3, 17 C.F.R. § 1.3 (2021), as any person engaged in a business that is of the nature of a commodity pool, investment trust, syndicate, or similar form of enterprise, and who, in connection therewith, solicits, accepts, or receives from others, funds, securities, or property, either directly or through capital contributions, the sale of stock or other forms of securities, or otherwise, for the purpose of trading in commodity interests.

16. A "participant" is defined in Regulation 4.10(c), 17 C.F.R. § 4.10(c) (2021), as any person that has any direct financial interest in a pool.

17. Section 4$o$(1)(A)-(B) of the Act, 7 U.S.C. § 6$o$(1)(A)-(B), in relevant part, makes it unlawful for CPOs to make use of the mails or any other means of interstate commerce, directly or indirectly, to employ any device, scheme or artifice to defraud any client or participant or prospective client or participant, or to engage in any transaction, practice, or course of business that operates as a fraud or deceit upon any client or participant or prospective client or participant.

18. A futures commission merchant ("FCM") is defined in Section 1a(28)(A) of the Act, 7 U.S.C. § 1a(28)(A), in relevant part, as an individual, association, partnership, corporation, or trust that is: (i) engaged in soliciting or in accepting orders for regulated transactions,

including futures, swaps, commodity options, or retail forex or commodity transactions, or (ii) acts as a counterparty to retail forex or commodity transactions; and which, in connection with these activities, "accepts any money, securities, or property (or extends credit in lieu thereof) to margin, guarantee, or secure any trades or contracts that result or may result therefrom."

## VI.   FACTS

### A.   Overview

19. During the Relevant Period, Cox solicited and accepted $842,900 in funds from Pool Participants for the purported purpose of trading commodity futures contracts. Only $478,600 of the funds went into a futures account for trading. The remaining $364,300 was deposited into bank accounts controlled by Cox. Of the $478,600 that went into the trading account, Cox lost $312,906 of the Pool Participant funds trading. Of the $529,994 in Pool Participant funds that remained after the losses in trading, $162,015 was used for Ponzi-type payments to Pool Participants and the remaining $367,979 was misappropriated by Cox. In order to conceal his misappropriation and trading losses, Cox created and distributed to at least some Pool Participants fraudulent account statements and/or screen shots that falsely reported trading profits, balances of the futures account he was trading on behalf of Pool Participants, and transfers and cash balances in bank accounts.

### B.   Pool Participant 1

20. Through a friend, Cox met a prospective Pool Participant (hereinafter "Pool Participant 1"), who attended the same religious congregation as Cox.

21. Cox represented to Pool Participant 1 that he was an experienced and successful commodity futures trader. On December 2, 2019, Pool Participant 1 deposited funds into a bank

account in the name of Cox that were to be used to trade commodity futures for the benefit of Pool Participant 1.

22.     Cox later told Pool Participant 1 the funds would be traded in a futures account in the name of Smart Edge, that Cox managed and controlled.

23.     Cox told Pool Participant 1 that because the futures account was carried in the name of Smart Edge, any funds had to be deposited to a bank account in the name of Smart Edge or his wife.

24.     On information and belief, no futures account in the name of Rico Cox, Smart Edge, or Jennifer Cox existed during the Relevant Period.

25.     Nonetheless, Cox reported profitable trading to Pool Participant 1, and Pool Participant 1 told family and friends about the profits.

   C.     **Depositing of Funds and Account Opening at FCM**

26.     Beginning in January 2020, family and friends of Pool Participant 1 began to deposit funds, either directly with Cox or through Pool Participant 1, to be traded by Cox.

27.     Pool Participant 1 accepted funds from other Pool Participants and then deposited the funds into his personal bank account.  As instructed by Cox, Pool Participant 1 then transferred the Pool Participant funds to bank accounts in the name of Cox, Cox's wife, or Smart Edge through cash deposits, inter-account transfers, or wire transfers.  When other Pool Participants deposited their funds directly with Cox, they did so through bank accounts in the name of Cox, Jennifer Cox, or Smart Edge.

28.     On March 27, 2020, at the direction of Cox, Pool Participant 1 opened a futures trading account at an FCM in his own name ("Futures Account").

29.     After the Futures Account opened, Pool Participant 1 accepted funds from other Pool Participants and either transferred the funds directly to the Futures Account that Cox

managed and controlled or sent them to a bank account in the name of Smart Edge.  Other Pool Participants continued to send their funds directly to Cox to be traded by Cox.

30. In or around March 2020, when opening the Futures Account, Cox instructed Pool Participant 1 to answer "no" to an account application question of whether anyone other than the account owner would have authority to trade the Futures Account and not to disclose to the FCM that Cox would be trading the account.  Cox also instructed Pool Participant 1 to answer "no" to a question whether anyone else's funds besides his own would be traded, and not to disclose that most of the funds deposited to the account would belong to other Pool Participants. Cox told Pool Participant 1 that he, Cox, needed the username and password for the account in order for him to trade the account.  Using Pool Participant 1's account login credentials, Cox began trading the account in or around May 2020.

31. Cox's trading the Futures Account in this fashion concealed Cox's identity and involvement from the FCM.  In addition, it allowed Cox to assuage Pool Participants' concerns by telling Pool Participants he was only able to trade and could not take any money directly from their account.

### D.  Cox Misappropriated Pool Participant Fund

32. Excluding Pool Participant funds that were lost in trading and sent to Pool Participants as Ponzi-type payments, the remainder of Pool Participant funds deposited with Cox for trading have been misappropriated.

33. Cox has misappropriated at least $367,979 of Pool Participant funds, for personal expenses.  For example, Cox has used Pool Participant funds to pay for hotels, restaurants, and retail and online purchases, including furniture.

  **E.**  **Cox's Fraudulent Solicitation and Misrepresentations About Trading Experience and Profit**

  34.  Cox has knowingly made fraudulent and material misrepresentations and omitted material facts in soliciting Pool Participants. For example, Cox told at least Pool Participant 1 that he was a successful trader with years of experience trading mainly in crude oil futures contracts. Cox did not achieve the profits he represented to Pool Participants, was never a successful futures trader, and cannot substantiate any of the touted returns. Additionally, when soliciting Pool Participants, Cox has failed to disclose the 2016 Order, which permanently banned him from commodity trading, as well as his 2013 felony fraud and theft convictions in Florida.

  35.  Cox has made promises of quick profits from trading to some Pool Participants. For example, on December 2, 2019, Cox sent a text message to Pool Participant 1 asking him to deposit $2,000 for futures trading, and Cox claimed he could turn that amount into a $1,000 profit by January 3, 2020. Cox also told some Pool Participants that he would give them their principal and profits at the end of six months. Cox's promises of quick returns were false statements. Cox has lost most of the amounts he traded for the Pool Participants.

  **F.**  **Unprofitable Trading and False Statements**

  36.  Starting at least in June 2020 and continuing through November 2020, Cox sent Pool Participant 1 reports on a nearly weekly basis concerning the trading of the Futures Account. Cox sent Pool Participant 1 the reports via email. These reports were narrative in form, and provided an update on the purported performance of Cox's trading on behalf of the Pool Participants.

  37.  For example, on June 28, 2020 Cox sent an email to Pool Participant 1 with the "weekly report" stating "[b]asically, we made 100K in a day, we are holding the trade with profit

and there is extreme potential for much more profit." In fact, the Futures Account did not make a $100,000 profit in a day, and as of June 30, 2020, it had a net loss of $41,000.

38. Cox also created and sent Pool Participant 1 false account statements showing large account balances and monthly profits. For example, a statement dated January 8, 2021 showed an ending monthly cash balance of approximately $ 1,389,091. These statements were false and in fact the account was never profitable, and by the end of August 2020 Cox was no longer providing the Pool Participants any distribution of purported profits or returning their principal investment. The balance for the Futures Account was virtually nothing, less than $500, by November 2020, within less than a year of when Cox began to solicit funds.

39. Cox created and sent some Pool Participants account screen shots that he distributed via text that falsely reported trading profits and balances of the futures account he was trading on behalf of Pool Participants. Cox knew that his representations were false while making these representations.

40. Cox created and sent Pool Participant 1 at least one false confirmation statement from a bank purporting to show a transfer from an account for Smart Edge, to Pool Participant 1 in the amount of $281,000. According to the statement, funds were to be transferred to Pool Participant 1 on February 1, 2021. Pool Participant 1 never received the funds.

G. The Unraveling

41. By creating false account statements and/or account screen shots that he issued to Pool Participant 1 via text or email, Cox sought to conceal his trading losses and to reflect that he was making a profit trading the Pool Participants' funds. Cox knew that his representations were false.

42. At the end of August 2020, Pool Participant 1 informed Cox that all the Pool Participants expected to be repaid at the conclusion of their six-month investment term. Cox told Pool Participant 1 he would prepare for the withdrawals.

43. Throughout the fall of 2020, Cox promised to pay the Pool Participants their principle investment plus the trading profits. However, none of the Pool Participants ever received the promised payouts.

44. Cox offered a myriad of excuses as to why he could not provide the Pool Participants their payouts. For example, Cox told Pool Participant 1 that the banks were holding up the transfers and that the accounts were frozen pending the finalizing of his divorce. Further, in an effort to assuage Pool Participant 1's concerns, on or around December 27, 2020, Cox made false representations by sharing a video with Pool Participant 1 in which he purported to show up-to-date trading information including trade orders and a balance of $1.4 million. In fact, the Futures Account was closed in November 2020 and there were no funds remaining in the Futures Account.

45. As an additional part of his efforts to create an illusion that Pool Participant funds were still available, Cox created and sent Pool Participant 1 at least one false email, addressed to Smart Edge, dated January 11, 2021. According to the email, Smart Edge purportedly requested a wire in the amount of $500,000 in funds which was purportedly approved and submitted to the FCM. Cox intended to mislead the Pool Participants by creating the impression that there was $500,000 in the Futures Account at the FCM by falsely representing that he had made a request to redeem the funds from the FCM.

## VII. VIOLATIONS OF THE COMMODITY EXCHANGE ACT AND COMMISSION REGULATIONS

### Count I
**Violation of Section 4b(a)(1)(A) and (C) of the Act, 7 U.S.C. § 6b(a)(1)(A), (C), Fraud by Making False Misrepresentations and Omissions and Misappropriating Funds**

46. The allegations set forth in the preceding paragraphs are realleged and incorporated herein by reference.

47. 7 U.S.C. § 6b(a)(1)(A) and (C) makes it unlawful for any person, in or in connection with any order to make, or the making of, any contract of sale of any commodity in interstate commerce or for future delivery that is made, or to be made, on or subject to the rules of a designated contract market, for or on behalf of any other person:  (A) to cheat or defraud or attempt to cheat or defraud the other person; or (C) willfully to deceive or attempt to deceive the other person by any means whatsoever in regard to any order or contract or the disposition or execution of any order or contract, or in regard to any act of agency performed, with respect to any order or contract for the other person.

48. During the Relevant Period, Cox has violated 7 U.S.C. § 6b(a)(1)(A) and (C) by knowingly making false representations of material fact, and knowingly omitting to disclose material facts, to Pool Participants.  Among other things, Cox misrepresented that he was a successful trader with years of experience trading futures, misrepresented that all Pool Participant deposits would be used to trade commodity futures contracts in the Pool, and misrepresented the performance of the Pool, including by providing false information and statements regarding the profits and balances of the Futures Account and the Pool.  In addition, Cox omitted to disclose material facts to Pool Participants, including, among other things, that their funds were misappropriated for Cox's personal use, the existence of the 2016 Order which

permanently banned him from commodity trading, and the existence of his felony fraud and theft criminal convictions in Florida in 2013.

49. Each act of misappropriation, misrepresentation or omission of a material fact made during all relevant times, including but not limited to those specifically alleged herein, is alleged as a separate and distinct violation of 7 U.S.C. § 6b(a)(1)(A) and (C).

## Count II
### Violation of Section 4(b)(a)(1)(B) of the Act, 7 U.S.C. § 6b(a)(1)(B): Fraud by Making False Reports/Statements

50. The allegations set forth in the preceding paragraphs are realleged and incorporated herein by reference.

51. 7 U.S.C. § 6b(a)(1)(B) makes it unlawful for any person, in or in connection with any order to make, or the making of, any contract of sale of any commodity in interstate commerce or for future delivery that is made, or to be made, on or subject to the rules of a designated contract market, for or on behalf of any other person . . . "willfully to make or cause to made to the other person any false report or statement or willfully to enter or cause to be entered for the other person any false record."

52. During the Relevant Period, Cox has violated 7 U.S.C. § 6b(a)(1)(B) by willfully providing some Pool Participants with the following:

(a) account statements showing Cox's profitable trading activity of Pool Participant funds, when in reality, such statements were false account statements;

(b) screen shots of profitable trading activity and overstated account balances that Cox created himself, when in reality Cox's trading of Pool Participant funds caused losses of most of the principal;

(c) reports sent via email concerning the trading of the Futures Account claiming profitable trading activity of Pool Participant funds, when in fact the account was never profitable; and

(d) a false confirmation statement from a bank purporting to show a transfer to Pool Participant 1 when Pool Participant 1 never received the funds.

53. Each act of providing a false statement or report to Pool Participants including without limitation those specifically alleged herein, is alleged as a separate and distinct violation of 7 U.S.C. § 6b(a)(1)(B).

## Count III
### Violations of Section 4*o*(1)(A)-(B) of the Act, 7 U.S.C. § 6*o*(1)(A)-(B): Fraud by a Commodity Pool Operator

54. The allegations set forth in the preceding paragraphs are realleged and incorporated herein by reference.

55. During the Relevant Period, Cox acted as a CPO because he solicited and accepted funds for participation in the Pool and otherwise operated the Pool.

56. 7 U.S.C. § 6*o*(1), in relevant part, makes it unlawful for CPOs, and their associated persons, by use of the mails or any means or instrumentality of interstate commerce, directly or indirectly, (A) to employ any device, scheme, or artifice to defraud any participant; or (B) to engage in any transaction, practice, or course of business that operates as a fraud or deceit upon any participant.  As provided in Regulation 4.15, 17 C.F.R. § 4.15 (2021), 7 U.S.C. § 6*o*(1) applies to all CPOs and their associated persons, whether registered, required to be registered, or exempted from registration.

57. Cox has violated 7 U.S.C. § 6*o*(1)(A)-(B) in that, by use of the mails or any means or instrumentality of interstate commerce, he, among other things, has misrepresented the

performance of the Pool and provided false information and statements regarding profits and balances of the Futures Account and Pool, misappropriated Pool Participant funds, and failed to disclose to Pool Participants the 2016 Order which permanently banned him from commodity trading, and his felony fraud and theft criminal convictions in Florida in 2013.

58. Each fraudulent or deceptive act, act of misappropriation, misrepresentation or omission of a material fact, and making of a false account statement and/or report made during all relevant times, including without limitation those specifically alleged herein, is alleged as a separate and distinct violation of 7 U.S.C. § 6*o*(1)(A)-(B).

## Count IV
### Violations of Section 4m(1) of the Act, 7 U.S.C. § 6m(1)
### Failure to Register as a CPO

59. The allegations set forth in the preceding paragraphs are realleged and incorporated herein by reference.

60. With certain specified exceptions and exemptions not applicable here, 7 U.S.C. § 6m(1) makes it unlawful for any CPO to make use of the mails or any means or instrumentality of interstate commerce in connection with its business unless it is registered with the CFTC.

61. During the Relevant Period, Cox has acted as a CPO within the meaning of Section 1a(11) of the Act, 7 U.S.C. § 1a(11), and Regulation 1.3, 17 C.F.R. § 1.3 (2021), and violated 7 U.S.C. § 6(m)(1) by using of the mails or other means or instrumentalities of interstate commerce in connection with his business as a CPO without being registered with the Commission as such.

62. Each use by Cox of the mails or other means or instrumentalities of interstate commerce in connection with his business as a CPO without registration with the Commission,

including, but not limited to, those specifically alleged herein, is alleged as a separate and distinct violation of 7 U.S.C. § 6m(1).

## RELIEF REQUESTED

WHEREFORE, the Commission respectfully requests that this Court, as authorized by Section 6c of the Act, 7 U.S.C. § 13a-1, and pursuant to its own equitable powers:

A.  Find that Cox violated Sections 4b(a)(1)(A)-(C), 4*o*(1)(A)-(B), and 4m(1) of the Act, 7 U.S.C. §§ 6b(a)(1)(A)-(C), 6*o*(1)(A)-(B), and 6m(1);

B.  Enter an order of permanent injunction enjoining Cox, and his affiliates, agents, servants, employees, successors, assigns, attorneys, and all persons in active concert with them, who receive actual notice of such order by personal service or otherwise, from engaging in the conduct described above, in violation of 7 U.S.C. §§ 6b(a)(1)(A)-(C), 6*o*(1)(A)-(B) and 6m(1);

C.  Enter an order of permanent injunction restraining and enjoining Cox, and his affiliates, agents, servants, employees, successors, assigns, attorneys, and all persons in active concert with them, from directly or indirectly:

(1)  Trading on or subject to the rules of any registered entity (as that term is defined in Section 1a(40) of the Act, 7 U.S.C. § 1a(40));

(2)  Entering into any transactions involving "commodity interests" (as that term is defined in Regulation 1.3, 17 C.F.R. § 1.3 (2021)), for accounts held in Cox's name or for accounts in which Cox has a direct or indirect interest;

(3)  Having any commodity interests traded on Cox's behalf;

(4) Controlling or directing the trading for or on behalf of any other person or entity, whether by power of attorney or otherwise, in any account involving commodity interests;

(5) Soliciting, receiving, or accepting any funds from any person for the purpose of purchasing or selling of any commodity interests;

(6) Applying for registration or claiming exemption from registration with the CFTC in any capacity, and engaging in any activity requiring such registration or exemption from registration with the CFTC, except as provided for in Regulation 4.14(a)(9), 17 C.F.R. § 4.14(a)(9) (2021); and/or

(7) Acting as a principal (as that term is defined in Regulation 3.1(a), 17 C.F.R. § 3.1(a) (2021)), agent, or any other officer or employee of any person registered, exempt from registration with the Commission, or required to be registered with the CFTC except as provided for in 17 C.F.R. § 4.14(a)(9).

D. Enter an order directing that Cox, as well as any third-party transferee and/or successors thereof, to disgorge pursuant to such procedure as the Court may order, all benefits received including, but not limited to, salaries, commissions, loans, fees, revenues, and trading profits derived, directly or indirectly, from acts or practices which constitute violations of the Act and the Regulations as described herein, including pre-judgment and post-judgment interest;

E. Enter an order requiring Cox, as well as any successors thereof, to make full restitution to every person who has sustained losses proximately caused by the violations described herein, including pre-judgment and post-judgment interest;

F.Enter an order requiring Cox to pay a civil monetary penalty assessed by the Court, in an amount not to exceed the penalty prescribed by Section 6c(d)(1) of the Act, 7 U.S.C. § 13a-1(d)(1), as adjusted for inflation pursuant to the Federal Civil Penalties Inflation Adjustment Act Improvements Act of 2015, Pub. L. 114–74, , tit. VII, § 701, 129 Stat. 584, 599-600, *see* Commission Regulation 143.8, 17 C.F.R. § 143.8 (2021), for each violation of the Act, as described herein;

G.Enter an order requiring Cox to pay costs and fees as permitted by 28 U.S.C. §§ 1920 and 2412(a)(2); and

H.Enter an order providing such other and further relief as this Court may deem necessary and appropriate under the circumstances.

Date: May 31, 2022Respectfully submitted,

COMMODITY FUTURES TRADING COMMISSION

/s/ Cristina Covarrubias
Trial Attorney
Commodity Futures Trading Commission
77 West Jackson Blvd., Suite 800
Chicago, Illinois 60604
(312) 596-0587
ccovarrubias@cftc.gov

David A. Terrell
Chief Trial Attorney
Commodity Futures Trading Commission
77 West Jackson Blvd., Suite 800
Chicago, Illinois 60604
(312) 596-0539
dterrell@cftc.gov

                                          Scott R. Williamson
                                        Deputy Regional Counsel
                                        Commodity Futures Trading Commission
                                        77 West Jackson Blvd., Suite 800
                                        Chicago, Illinois 60604
                                        (312) 596-0560
                                        swilliamson@cftc.gov